FILED

2016 MAR 18 PM 3:47

CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES

BY: _____

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

January 2016 Grand Jury

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>              Plaintiff,<br><br>              v.<br><br>DU TRUONG NGUYEN,<br>   aka "Andrew," and<br>DIANA HUONG NGUYEN,<br>   aka "Thi Nguyen,"<br>   aka "Chau Huong Nguyen,"<br>   aka "Huong Chau Nguyen,"<br><br>              Defendants. | CR No. 16-CR16-0166<br><br>I N D I C T M E N T<br><br>18 U.S.C. § 1956(h): Conspiracy to<br>Launder Monetary Instruments;<br>18 U.S.C. § 1956(a)(3)(B):<br>Laundering of Monetary<br>Instruments; 18 U.S.C. § 2(a):<br>Aiding and Abetting; 18 U.S.C.<br>§ 982(a)(1): Criminal Forfeiture] |

The Grand Jury charges:

COUNT ONE

[18 U.S.C. § 1956(h)]

A.   GENERAL DEFINITIONS AND ALLEGATIONS

     1.   At all times material to this Indictment, the following definitions and allegations apply:

          a.   The abbreviation "CS1" refers to a confidential source operating under the direction and control of the Federal Bureau of Investigation ("FBI"), who held himself out as an agent of a criminal enterprise that engaged in drug trafficking, that was in fact an

1   undercover operation of the FBI.  CS1 further held himself out as
2   someone who needed to conduct, and who himself could conduct, money
3   laundering transactions.

4         b.    "United Business Associates" was the name of an
5   undercover bank account maintained by the FBI.

6         c.    The Bank Secrecy Act (hereinafter "BSA"), Title 31,
7   United States Code, Sections 5313-5326, was a set of laws enacted by
8   Congress and regulations promulgated by the Department of Treasury to
9   address an increase in criminal money laundering through financial
10  institutions.  In order to prevent financial institutions from being
11  used as intermediaries for the transfer or deposit of money derived
12  from criminal activity such as narcotics trafficking, organized
13  crime, terrorist financing, and other financial crimes, the BSA and
14  regulations issued under the BSA required financial institutions to
15  file Currency Transaction Reports ("CTRs") with the United States
16  Department of the Treasury for every transaction conducted by and
17  through such financial institution involving more than $10,000 in
18  currency.

19  B.    OBJECTS OF THE CONSPIRACY

20        2.    Beginning on or about January 24, 2011, and continuing
21  until on or about June 29, 2011, in Los Angeles County, within the
22  Central District of California, and elsewhere, defendants DU TRUONG
23  NGUYEN, also known as ("aka") "Andrew" ("DU NGUYEN"), and DIANA HUONG
24  NGUYEN, aka "Thi Nguyen," aka "Chau Huong Nguyen," aka "Huong Chau
25  Nguyen" ("DIANA NGUYEN"), and others known and unknown to the Grand
26  Jury, conspired and agreed with each other to knowingly and
27  intentionally commit the following offenses:

28

2

1          a.   To conduct or attempt to conduct financial

2  transactions, affecting interstate and foreign commerce, believing

3  that the property involved in the financial transactions represented

4  the proceeds of some form of unlawful activity, and knowing that the

5  transactions were designed in whole or in part to conceal and

6  disguise the nature, location, source, ownership, and control of the

7  proceeds of specified unlawful activity, in violation of Title 18,

8  United States Code, Section 1956(a)(1)(B)(i); and

9          b.   To conduct or attempt to conduct financial

10  transactions, affecting interstate and foreign commerce, believing

11  that the property involved in the financial transactions represented

12  the proceeds of some form of unlawful activity, and knowing that the

13  transactions were designed in whole or in part to avoid a transaction

14  reporting requirement under State or Federal law, in violation of

15  Title 18, United States Code, Section 1956(a)(1)(B)(ii).

16  C.   MEANS BY WHICH THE OBJECTS OF THE CONSPIRACY WERE TO BE

17      ACCOMPLISHED

18      3.   The objects of the conspiracy were to be accomplished, in

19  substance, as follows:

20          a.   Defendants DU NGUYEN and DIANA NGUYEN would make

21  arrangements for money laundering transactions to be conducted.

22          b.   Defendant DU NGUYEN would receive cash from CS1, who

23  had represented to defendants DU NGUYEN and DIANA NGUYEN that the

24  cash was the proceeds of specified unlawful activity.

25          c.   Defendant DU NGUYEN would cause cashier's checks to be

26  prepared in exchange for the cash provided by CS1.

27          d.   Defendant DU NGUYEN would arrange to have the

28  cashier's checks made out to a fictitious name provided by CS1.

1         e.   Defendant DU NGUYEN would provide the fraudulently

2  obtained cashier's checks to CS1.

3         f.   Defendants DU NGUYEN and DIANA NGUYEN would receive a

4  fee in return for converting the cash provided by CS1 into cashier's

5  checks.

6         g.   Defendants DU NGUYEN and DIANA NGUYEN would develop

7  alternative avenues for money laundering, including at both banks and

8  supermarkets.

9         h.   Defendants DU NGUYEN and DIANA NGUYEN would arrange

10  for money laundering transactions to be conducted in such a manner

11  that the identity of CS1 would be concealed in any reports filed on

12  the transactions.

13  D.   OVERT ACTS

14      4.   In furtherance of the conspiracy and to accomplish the

15  objects of the conspiracy, defendants DU NGUYEN and DIANA NGUYEN, and

16  others known and unknown to the Grand Jury, committed various overt

17  acts within the Central District of California, and elsewhere,

18  including, but not limited to, the following:

19     Overt Act No. 1:   On or about January 24, 2011, at a Bank of

20  America branch located at the intersection of Brookhurst Street and

21  Westminster Boulevard, in Garden Grove, California (the "Westminster

22  Bank of America"), defendant DU NGUYEN asked CS1 to call him about

23  money laundering transactions.

24     Overt Act No. 2:   On or about January 31, 2011, in a telephone

25  call with CS1, defendant DU NGUYEN agreed to meet with CS1 on Friday,

26  February 4, 2011, and to text CS1 the address of the meeting location

27  in Santa Ana, California.

28

1      Overt Act No. 3:   On or about February 4, 2011, at the
2  Starbucks located at the intersection of Atlantic Boulevard and
3  Valley Boulevard in Alhambra, California (the "Alhambra Starbucks"),
4  defendant DU NGUYEN met with CS1 to discuss conducting money
5  laundering transactions.

6      Overt Act No. 4:   On or about February 4, 2011, at the
7  Alhambra Starbucks, defendant DU NGUYEN introduced defendant DIANA
8  NGUYEN to CS1 and told CS1 that it was okay to talk in front of
9  defendant DIANA NGUYEN, who said that she worked for defendant DU
10 NGUYEN.

11     Overt Act No. 5:   On or about February 4, 2011, at the
12 Alhambra Starbucks, defendant DU NGUYEN told CS1 that he had
13 connections in a bank and in supermarkets and proposed doing money
14 laundering deals, first at the bank and then in the supermarkets.

15     Overt Act No. 6:   On or about February 4, 2011, at the
16 Alhambra Starbucks, defendant DU NGUYEN told CS1 that he could do a
17 money laundering deal for one million dollars.

18     Overt Act No. 7:   On or about February 4, 2011, at the
19 Alhambra Starbucks, defendant DIANA NGUYEN told CS1 that it would be
20 easy to do a one million dollar money laundering deal at the
21 supermarket because a friend of defendant DU NGUYEN's owned the
22 supermarket and that no questions would be asked about the deal.

23     Overt Act No. 8:   On or about February 4, 2011, at the
24 Alhambra Starbucks, defendant DIANA NGUYEN told CS1 that money
25 laundering transactions of $250,000 or $300,000 were easy for her.

26     Overt Act No. 9:   On or about February 4, 2011, at the
27 Alhambra Starbucks, defendant DIANA NGUYEN told CS1 not to go to the
28 bank with a lot of cash, but to exchange it at the supermarket.

1    Overt Act No. 10:   On or about February 4, 2011, at the

2  Alhambra Starbucks, defendant DU NGUYEN agreed with CS1 to start with

3  a money laundering transaction for $25,000.

4    Overt Act No. 11:   On or about February 4, 2011, at the

5  Alhambra Starbucks, defendant DU NGUYEN told CS1 that he had been

6  laundering money for four years.

7    Overt Act No. 12:   On or about February 4, 2011, at the

8  Alhambra Starbucks, defendant DU NGUYEN asked CS1 for a nine percent

9  fee for a money laundering transaction at the supermarket, and

10  defendant DIANA NGUYEN confirmed the nine percent fee.

11    Overt Act No. 13:   On or about February 4, 2011, at the

12  Alhambra Starbucks, after CS1 said that his money was corruption

13  money from China, defendant DU NGUYEN said that for a minimum money

14  laundering transaction of $100,000, defendant DU NGUYEN would charge

15  a fee of seven percent.

16    Overt Act No. 14:   On or about February 4, 2011, at the

17  Alhambra Starbucks, defendant DU NGUYEN told CS1 that in future

18  transactions they would use supermarkets.

19    Overt Act No. 15:   On or about February 14, 2011, in a

20  telephone call between defendant DU NGUYEN and CS1, defendant DU

21  NGUYEN asked CS1 about the schedule for the money laundering

22  transaction.

23    Overt Act No. 16:   On or about February 16, 2011, in a

24  telephone call between defendant DU NGUYEN and CS1, defendant DU

25  NGUYEN offered to do a money laundering transaction in Las Vegas.

26    Overt Act No. 17:   On or about February 16, 2011, defendant DU

27  NGUYEN sent CS1 a text message in which defendant DU NGUYEN wrote: "i

28  can do transaction with 6% fee for you.  Let me know.  Thanks.".

1    <u>Overt Act No. 18:</u>   On or about March 17, 2011, at a Starbucks

2    in the Brea Mall in Brea, California (the "Brea Starbucks"),

3    defendants DU NGUYEN and DIANA NGUYEN met with CS1 to discuss an

4    upcoming money laundering transaction.

5    <u>Overt Act No. 19:</u>   On or about March 17, 2011, at the Brea

6    Starbucks, after CS1 told defendants DU NGUYEN and DIANA NGUYEN that

7    CS1's money was from cocaine, defendant DU NGUYEN agreed to do a

8    $25,000 deal on March 28, 2011, for a six percent fee.

9    <u>Overt Act No. 20:</u>   On or about March 17, 2011, at the Brea

10   Starbucks, defendant DIANA NGUYEN acknowledged knowing about a

11   reporting requirement called a "CTR."

12   <u>Overt Act No. 21:</u>   On or about March 28, 2011, at the

13   Westminster Bank of America, defendant DU NGUYEN met with CS1 to

14   conduct a money laundering transaction.

15   <u>Overt Act No. 22:</u>   On or about March 28, 2011, at the

16   Westminster Bank of America, defendant DU NGUYEN presented CS1 with a

17   business card in the name of "Andrew Nguyen," with an email address

18   of "andrew@americanenergystar.com."

19   <u>Overt Act No. 23:</u>   On or about March 28, 2011, at the

20   Westminster Bank of America, defendant DU NGUYEN accepted from CS1

21   $1,500 in United States currency as his fee for conducting the money

22   laundering transaction.

23   <u>Overt Act No. 24:</u>   On or about March 28, 2011, at the

24   Westminster Bank of America, defendant DU NGUYEN accepted $25,000 in

25   United States currency from CS1 for the purpose of converting that

26   currency into a cashier's check.

27   <u>Overt Act No. 25:</u>   On or about March 28, 2011, at the

28   Westminster Bank of America, defendant DU NGUYEN went with CS1 into

7

the bank and to a teller window, where defendant DU NGUYEN obtained a Bank of America cashier's check in the amount of $25,000, number 42451097, with the remitter identified as "American Energy Star Group Corporation," made out to "United Business Associates."

Overt Act No. 26: On or about April 13, 2011, at a Chase Bank branch located at 7830 Edinger Avenue in Huntington Beach, California (the "Huntington Beach Chase Bank"), defendants DU NGUYEN and DIANA NGUYEN met with CS1 to discuss future money laundering transactions.

Overt Act No. 27: On or about April 13, 2011, at the Huntington Beach Chase Bank, defendant DU NGUYEN told CS1 that he had paid defendant DIANA NGUYEN a two percent commission.

Overt Act No. 28: On or about June 29, 2011, at the Brea Starbucks, defendants DU NGUYEN and DIANA NGUYEN met with CS1 to discuss a future money laundering transaction.

Overt Act No. 29: On or about June 29, 2011, at the Brea Starbucks, defendant DU NGUYEN told CS1 that defendant DU NGUYEN was working with a bank manager who would charge five percent for the next money laundering transaction.

Overt Act No. 30: On or about June 29, 2011, at the Brea Starbucks, defendant DIANA NGUYEN told defendant DU NGUYEN that CS1 wanted to avoid paperwork.

Overt Act No. 31: On or about June 29, 2011, at the Brea Starbucks, defendant DU NGUYEN told CS1 that there would be no report of the money laundering transaction.

Overt Act No. 32: On or about June 29, 2011, at the Brea Starbucks, defendant DIANA NGUYEN, in front of defendant DU NGUYEN, acknowledged that she believed that CS1's money was from drugs.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COUNT TWO

[18 U.S.C. §§ 1956(a)(3)(B), 2(a)]

On or about March 28, 2011, in Los Angeles County, within the Central District of California, and elsewhere, defendants DU TRUONG NGUYEN, also known as ("aka") "Andrew," and DIANA HUONG NGUYEN, aka "Thi Nguyen," aka "Chau Huong Nguyen," aka "Huong Chau Nguyen," each aiding and abetting the other, with the intent to conceal and disguise the nature, location, source, ownership, and control of property believed to be the proceeds of specified unlawful activity, that is, the felonious importation, receiving, buying, selling, and otherwise dealing in controlled substances punishable under a law of the United States ("drug trafficking"), knowingly conducted, and attempted to conduct, the following financial transaction, affecting interstate commerce, involving property represented to be proceeds of specified unlawful activity, that is, drug trafficking, by a person at the direction, and with the approval of, a Federal official authorized to investigate and prosecute violations of Title 18, United States Code, Section 1956:

Transaction:  The exchange of a cashier's check payable to United Business Associates, dated March 28, 2011, number 424251097, in the amount of $25,000, at Bank of America, for $25,000 in cash, plus a $1,500 fee.

FORFEITURE ALLEGATION

[18 U.S.C. § 982(a)(1)]

1.    Pursuant to Rule 32.2 of the Federal Rules of Criminal Procedure, notice is hereby given that the United States will seek forfeiture as part of any sentence, in accordance with Title 18, United States Code, Section 982(a)(1), in the event of any defendant's conviction under any of Counts One and Two of this Indictment.

2.    Each defendant so convicted shall forfeit to the United States the following property:

a.    all right, title, and interest in any and all property, real or personal, involved in any such offense, and any property traceable thereto; and/or

b.    a sum of money equal to the total value of the property described in paragraph 2(a).

3.    Pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b), each defendant convicted under any of Counts One and Two of this Indictment shall forfeit substitute property, up to the value of the total amount described in paragraph 2, if, as the result of any act or omission of said defendant, the property described in paragraph 2, or any portion thereof, cannot be located upon the exercise of due diligence; has been transferred, sold to, or deposited with a third party; has been placed beyond the jurisdiction of the court; has been substantially diminished in value; or has been commingled with other property that cannot be divided without difficulty.

1     4.   Each of the defendants convicted under any of Counts One

2 and Two of this Indictment shall be jointly and severally liable for

3 any forfeiture ordered as a result of such conviction.

4

5                             A TRUE BILL

6

7                             Foreperson

8

9 EILEEN M. DECKER
United States Attorney

10

11

12 LAWRENCE S. MIDDLETON
Assistant United States Attorney
Chief, Criminal Division

13

14 JUSTIN RHOADES
Assistant United States Attorney
Chief, Violent and Organized
15 Crime Section

16 KAREN I. MEYER
Assistant United States Attorney
17 Violent and Organized Crime
Section

18

19 ANDREW L. CREIGHTON
Trial Attorney
Organized Crime & Gang Section
20 Criminal Division

21

22

23

24

25

26

27

28