TRACY L. WILKISON
United States Attorney
SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division
KAREN I. MEYER (Cal. Bar No. 220554)
Assistant United States Attorney
Violent & Organized Crime Section
     1300 United States Courthouse
     312 North Spring Street
     Los Angeles, California 90012
     Telephone: (213) 894-8559
     Facsimile: (213) 894-3713
     E-mail:    kim.meyer@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. CR 16-166-ODW |
|---|---|
| Plaintiff, | TRIAL MEMORANDUM |
| v. | Trial Date: December 7, 2021 |
| DU TRUONG NGUYEN, aka "Andrew," | Trial Time: 9:00 a.m. |
| | Place: Courtroom of the Hon. Otis D. Wright II |
| Defendant. | |

Plaintiff United States of America, by and through its counsel of record, the United States Attorney for the Central District of California and Assistant United States Attorney Karen I. Meyer,

//
//
//

hereby submits its trial memorandum.

Dated: December 1, 2021                 Respectfully submitted,

                                            TRACY L. WILKISON
                                            United States Attorney

                                            SCOTT M. GARRINGER
                                            Assistant United States Attorney
                                            Chief, Criminal Division

                                                    /s/
                                            KAREN I. MEYER
                                            Assistant United States Attorney

                                            Attorneys for Plaintiff
                                            UNITED STATES OF AMERICA

**I.   CASE STATUS**

1.  Trial is scheduled for December 7, 2021, at 9:00 a.m. The government's case-in-chief should require no more than two court days. Defendant has not provided any information as to whether he intends on presenting a defense case. The government reserves the right to call rebuttal witnesses should defendant present a case.

2.  Defendant is out of custody on bond and is the sole remaining defendant charged.

3.  Trial by jury has not been waived.

4.  The government anticipates calling at least three witnesses in its case-in-chief, including (1) FBI SA Omar Trevino, who will authenticate the video and audio clip exhibits and will testify concerning the investigation and how he instructed the source to operate as an informant; (2) the source, who participated in meetings with the defendant and co-defendant Diana Nguyen and video-recorded those meetings, had phone calls with the defendant that were recorded, and texted with the defendant, which were also captured; and (3) Diana Nguyen, the co-defendant in the case. The government has provided to defense counsel a proposed stipulation on the status of Bank of America as a financial institution that is FDIC-insured, including the bank's operations in interstate and foreign commerce, which defendant has indicated that he will sign. The government recently revised the stipulation for defendant's further consideration to include the definition of a monetary instrument.

To the extent the parties execute a stipulation, the government requests that the Court verify on the record defendant's agreement with any written stipulation filed by the parties.

5. The government intends to use the Trial Director software program in order to display evidence via the in-court monitors. Such evidence will include video and audio clips, transcript excerpts, exhibits of the transcript excerpts synced with the playing video clips, photographs, and documents.

6. Defendant has not noticed any defenses, nor produced any reciprocal discovery.

## II.   PRETRIAL MOTIONS

On October 25, 2021, the government filed a motion in limine to admit evidence of the prior money laundering transaction that defendant conducted on January 24, 2011, at the same Bank of America branch. Defendant has been indicted for this conduct in the related case of United States v. Tu Chau Lu, et al., CR 15-662-ODW. This Court granted the government's motion on November 29, 2021.

## III. INDICTMENT AND ELEMENTS

Defendant had been charged with money laundering conspiracy, in violation 18 U.S.C. § 1956(h) (Count One), and laundering of monetary instruments, in violation of 1956(a)(3)(B) (Count Two – sting money laundering). The elements of these crimes will be set forth in the Proposed Jury Instructions.

## IV.   STATEMENT OF FACTS

Defendant joined a conspiracy to launder cash. The means by which that cash was to be laundered was through the exchange of cash for a cashier's check, for a fee. After initially meeting an FBI confidential source ("CS1") on January 24, 2011, to conduct a $250,000 money laundering transaction, defendant and co-defendant met with CS1 in both February and March 2021 to discuss and plan another money laundering transaction, this time for $25,000, which defendant

completed on March 28, 2021, for a $1500 fee.  The conspiracy contemplated that more than one money laundering transaction would take place, and there were additional meetings after the deal was done where the possibility of further transactions was discussed.

    Defendant did not know that the person who represented himself to be in need of help laundering his drug proceeds was a source for the FBI.  At the planning meetings, CS1 represented to defendant and co-defendant that his money was drug money (cocaine, ice) and corruption money.  They discussed the amount of cash that would be laundered, the fact that safety was a priority, and that CS1 had been unhappy with how the $250,000 transaction had been conducted, namely, that he had been forced to move banks and had waited around for three hours before defendant was called in to complete the transaction. Defendant also negotiated with CS1 a 6 percent fee that CS1 would pay for defendant's money laundering services.

    For both deals, defendant purchased cashier's checks drawn on his own business accounts.  On March 28, 2011, CS1 handed two envelopes of cash to defendant, one containing $25,000, the other containing the $1,500 money laundering fee, and left with the $25,000 cashier's check.  The next month, defendant and co-defendant took CS1 to meet with a banker at Chase Bank, where the banker explained the reporting requirements involved when large amounts of cash are deposited with the bank.  (The Chase banker was not the bank insider that CS1 represented he needed.)  Afterward, defendant continued to text CS1 to set up another money laundering transaction.  In June 2011, three months after the $25,000 transaction had taken place, defendant and co-defendant again met with CS1 to discuss doing a future deal.

**V.   EVIDENTIARY ISSUES**

**A.   Stipulations**

As noted above, there is one stipulation under consideration by the defense relating to the status of Bank of America as FDIC-insured and operating in interstate commerce, in addition to related financial definitions.

**B.   Motion in Limine Re: Admissibility of Bank Records**

On November 30, 2021, the government filed a motion in limine to admit Bank of America signature cards for defendant's businesses that were identified on the cashier's checks he provided to the source. As noted in that motion, such records constitute an exception to the hearsay rule pursuant to Federal Rule of Evidence 803(6).  United States v. Ray, 930 F.2d 1368, 1370 (9th Cir. 1991) (the following must be established through a records custodian to be admissible: "(1) the records must have been made or transmitted by a person with knowledge at or near the time of the incident recorded; and (2) the record must have been kept in the course of regularly conducted business activity.").  The accompanying custodian of records declarations pursuant to Federal Rule of Evidence 902(11) make the records self-authenticating.

**C.   Relevant Conspiracy Law**

"The agreement need not be explicit; it may be inferred from the defendant's acts pursuant to a fraudulent scheme or from other circumstantial evidence." United States v. Cloud, 872 F.2d 846, 852 (9th Cir. 1989).  The government need not prove the existence of a formal agreement; instead, an agreement constituting a conspiracy may be inferred from the acts of the parties and other circumstantial evidence indicating concert of action for the accomplishment of a

4

common purpose. See United States v. Garza, 980 F.2d 546, 552-53 (9th Cir. 1992).

**D. Co-Conspirator Statements**

Declarations by one co-conspirator during the course of and in furtherance of the conspiracy may be used against another conspirator because such declarations are not hearsay. See Fed. R. Evid. 801(d)(2)(E). Further, statements made in furtherance of a conspiracy were expressly held by the Supreme Court in Crawford v. Washington, 541 U.S. 36, 56 (2004) to be "not testimonial" such that their admission does not violate the Confrontation Clause. As such, the admission of co-conspirator statements pursuant to Fed. R. Evid. 801(d)(2)(E) requires only a foundation that: (1) the declaration was made during the life of the conspiracy; (2) it was made in furtherance of the conspiracy; and (3) there is, including the co-conspirator's declaration itself, sufficient proof of the existence of the conspiracy and of the defendant's connection to it. See Bourjaily v. United States, 483 U.S. 171, 173, 181 (1987).

The government must prove by a preponderance of the evidence that a statement is a co-conspirator declaration in order for the statement to be admissible under Rule 801(d)(2)(E). Bourjaily, 483 U.S. at 176; United States v. Crespo de Llano, 838 F.2d 1006, 1017 (9th Cir. 1987). Whether the government has met its burden is to be determined by the trial judge, not the jury. United States v. Zavala-Serra, 853 F.2d 1512, 1514 (9th Cir. 1988). The Court may rely on inadmissible evidence, such as a co-conspirator's plea agreement, in determining whether the 801(d)(2)(E) exception applies.

Cf. United States v. Gil, 58 F.3d 1414, 1420 (9th Cir. 1995) (the preliminary determination of whether FRE 801(d)(2)(E) applies is to be made "by the court, not the jury, pursuant to Fed. R. Evid. 104(a)); Fed. R. Evid. 104(a) ("the court must decide any preliminary question about whether . . . evidence is admissible. In so deciding, the court is not bound by evidence rules, except those on privilege").

To be admissible under Federal Rule of Evidence 801(d)(2)(E) as a statement made by a co-conspirator in furtherance of the conspiracy, a statement must "further the common objectives of the conspiracy." United States v. Arambula-Ruiz, 987 F.2d 599, 607-08 (9th Cir. 1993). Co-conspirator declarations need not be made to a member of the conspiracy to be admissible under Rule 810(d)(2)(E) and can be made to government informants and undercover agents. Zavala-Serra, 853 F.2d at 1516 (statements to informants and undercover agents); United States v. Tille, 729 F.2d 615, 620 (9th Cir. 1984) (statements to informants); United States v. Echeverry, 759 F.2d 1451, 1457 (9th Cir. 1985) (statements to undercover agent).

**E. Recorded Conversations**

At trial, the government expects to introduce five short video recording clips and one short audio clip.[1] Each recording clip has been placed onto a compact disc, which the government will offer as exhibits at trial.

---

[1] To the extent defendant attempts to present his own statements, it is plain that self-serving exculpatory statements by defendant are inadmissible hearsay. See United States v. Waters, 627 F.3d 345, 385 (9th Cir. 2010) (holding that defendant's exculpatory statement proclaiming innocence "is clearly hearsay, and was therefore properly excluded under Rule 801(a)").

6

The foundation that must be laid for the introduction into evidence of recorded conversations is a matter largely within the discretion of the trial court. There is no rigid set of foundational requirements. Rather, the Ninth Circuit has held that recordings are sufficiently authenticated under Federal Rule of Evidence 901(a) if sufficient proof has been introduced "so that a reasonable juror could find in favor of authenticity or identification," which can be done by "proving a connection between the evidence and the party against whom the evidence is admitted" and can be done by both direct and circumstantial evidence. United States v. Matta-Ballesteros, 71 F.3d 754, 768 (9th Cir. 1995), modified by 98 F.3d 1100 (9th Cir. 1996).

"Where the government offers a tape recording of the defendant's voice, it must also make a prima facie case that the voice on the tape is in fact the defendant's, whether by means of a witness who recognizes the voice or by other extrinsic evidence." Witnesses may testify competently as to the identification of a voice on a recording. United States v. Gadson, 763 F.3d 1189, 1203-04 (9th Cir. 2014). A witness's opinion testimony in this regard may be based upon his having heard the voice on another occasion under circumstances connecting it with the alleged speaker. Fed. R. Evid. 901(b)(5); United States v. Torres, 908 F.2d 1417, 1425 (9th Cir. 1990) ("Testimony of voice recognition constitutes sufficient authentication.").

With respect to the audio recording of a phone call, in addition to CS1 identifying defendant on the call, FBI SA Trevino will testify to the system used to record the call, which is sufficient authentication pursuant to Federal Rule of Evidence 901(b)(9),

7

Evidence about a Process or System.  Gadson, 763 F.3d at 1203-04 ("where the government offers an audiotape, a witness with knowledge may testify that the recording is what it purports to be").

**F.   Photographs**

The government intends to introduce a few still photographs taken from the video recordings.  Photographs are generally admissible as evidence.  Photographs should be admitted so long as they fairly and accurately represent the event or object in question.  United States v. Oaxaca, 569 F.2d 518, 525 (9th Cir. 1978).